UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-14244-CIV-MIDDLEBROOKS/MAYNARD

RONALD EDWARD WOLF, and
HEATHER WOLF,
individually and as husband and wife,

    Plaintiffs,

v.

COLLEGE OF THE HOLY CROSS, and
PATRICK JOSEPH DIGGINS,

    Defendants.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO COMPEL [DE 20] AND DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER [DE 33]

**THIS CAUSE** comes before this Court upon Plaintiffs' Motion to Compel Deposition of Defendant Patrick Joseph Diggins (DE 20) and Defendants' Cross-Motion for Protective Order to prevent that deposition (DE 33). Having reviewed the Motions and attachments thereto, oral argument and evidence presented at hearings on November 12, 2020 and December 10, 2020, the undersigned respectfully recommends that Plaintiffs' Motion to Compel be denied and Defendants' Cross-Motion for Protective Order be granted.

## DISCUSSION

This case arises from a motor vehicle accident that occurred in Vero Beach, Florida, almost one year ago exactly on January 15, 2020. *See generally* DE 4. At the time of the accident, Defendant Patrick Joseph Diggins ("Mr. Diggins"), who was the Director of Rowing for Defendant College of the Holy Cross ("Holy Cross"), was operating a transit van occupied by student members of the Holy Cross women's rowing team. *Id.* at ¶¶ 6-7, 10; DE 5 at ¶¶ 6-7, 10. Mr.

Ronald Wolf, one of the plaintiffs in this case, was driving his own vehicle nearby when Mr. Diggins allegedly failed to yield to oncoming traffic while making a left turn.  DE 4 at ¶¶ 9-16.  The vehicles operated by Mr. Diggins and Mr. Wolf collided, resulting in catastrophic injury to occupants of both vehicles, including the death of one of the Holy Cross students.  *Id.* at ¶ 17; DE 36, 42.

Mr. Wolf and his wife sued Defendants on July 17, 2020, asserting a claim for negligence against Mr. Diggins and a claim for vicarious liability against Holy Cross.  DE 1; *see also* DE 4.  On September 22, 2020, the Honorable Donald M. Middlebrooks, the presiding judge in this matter, issued an Order setting trial during the two-week trial period commencing May 10, 2021.  DE 6.  Defendants filed a motion to modify the trial term, requesting that trial be reset for October 2021 or later due to the number of witnesses involved in the accident, complications from the COVID-19 public emergency, and Mr. Diggins' health.  DE 11.[1]  Regarding Mr. Diggins' health, Defendants stated generally that "[a]s a result of the Accident, [he] is suffering significant ongoing injuries.  While Mr. Diggins is rehabilitating diligently, and it is expected that he will achieve the complete recovery of these cognitive functions, this predicament will make it difficult for Mr. Diggins to assist in his own defense, participate in discovery, or testify at a deposition or trial."  *Id.* at 2-3.  On October 23, 2020, Judge Middlebrooks denied Defendants' request for a trial continuance without prejudice finding it premature given that trial was seven months out at that point.  *Id.* at 1-2.  On November 3, 2020, Judge Middlebrook referred Plaintiffs' Motion to Compel to the undersigned for resolution.  DE 24.

---

[1] Defendants filed an amended motion to modify trial term on October 6, 2020, but the relief requested and the argument in support thereof remained the same.  *See* DE 15.

Plaintiffs filed the instant motion to compel on October 30, 2020. DE 20. The motion asks the Court to require Defendants to provide dates for Mr. Diggins to be deposed.[2] In response, Defendants moved for a protective order preventing Mr. Diggins' deposition for at least thirty days for medical reasons due to his physical and psychological condition. DE 33. The undersigned allowed both motions to be fully briefed and held two hearings on the matter. *See* DE 20, 33, 36, 38, 40, 42. During that time more than thirty days passed. The relief requested by Defendants changed, however, from an order delaying Mr. Diggins' deposition for at least thirty days to an order postponing his deposition until Spring 2021, after the anniversary of the fatal accident at issue in this case. DE 42. Plaintiffs maintain that Defendants have not shown good cause for a protective order and claim they will be severely prejudiced if they are unable to depose Mr. Diggins now, given the impending discovery deadline of February 8, 2021 and the rapidly approaching trial date of May 10, 2021. *See* DE 38. According to Plaintiffs, Mr. Diggins was the driver of the Holy Cross van during the fatal incident and is the only witness to maintain that the accident was partially or wholly the fault of Mr. Wolf. *Id.* at 4. Plaintiffs also emphasize that more than thirty days have now passed since Defendants initially requested a delay of at least one month. That request has now progressed from thirty days into a delay of several months with no guarantee that Mr. Diggins' medical condition will sufficiently improve in that time or that Defendants will not continue requesting still further delay.

Federal Rule of Civil Procedure 26(c) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

---

[2] Plaintiffs' Motion to Compel also requested the Court order Defendants to provide dates when a Rule 30(b)(6) designee for Holy Cross is available to be deposed. DE 20. In a subsequently filed Notice, Plaintiffs noted that Defendants provided deposition dates for the corporate designee of Holy Cross. DE 28. Accordingly, Plaintiffs withdrew the portion of the Motion to Compel relating to the deposition of the 30(b)(6) corporate designee of the Holy Cross. *Id.* at ¶ 8.

or expense." Fed. R. Civ. P. 26(c)(1).  To make a showing of good cause, the moving party has the burden of showing injury "with specificity." *Reset Holdings Corp. v. Feller*, No. 09-80158-CIV, 2009 WL 10690285, at *1 (S.D. Fla. July 21, 2009) (citing *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000)).  In other words, the party requesting a protective order must specifically demonstrate facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm that will result without one.  *Dunford v. Rolly Marine Service Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005).  A court must balance the competing factors to determine whether good cause has been shown.  *Id.*  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," will not do.  *Reset Holdings Corp.*, 2009 WL 10690285 at *1.

The burden of showing good cause to prevent a witness from being deposed entirely is particularly onerous; the moving party must demonstrate extraordinary circumstances before a court will do so.  *Dunford*, 233 F.R.D at 637 ("The burden of showing good cause to preclude a deposition altogether is a heavy one."); *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (protective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances); *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."); *see also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.").[3]  "One of those rare circumstances that may preclude the taking of a deposition altogether is the medical incapacity of a witness to attend and sit through a deposition."  *Dunford*, 233 F.R.D. at 637.  Another is when

---

[3] Decisions of the former Fifth Circuit handed down on or before September 30, 1981 are binding upon this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

participating in a deposition would threaten the witness' health or life. *Roma Outdoor Creations, Inc. v. City of Cumming, Georgia*, 2008 WL 11411396, *2 (N.D. Ga. Sept. 18, 2008). A party seeking to prevent a deposition on medical grounds must make a "specific and documented factual showing that the deposition will be dangerous to the deponent's health." *Arnold v. Wausau Underwriters Ins. Co.*, No. 13-60299-CIV, 2013 WL 5488520, at *2 (S.D. Fla. Sept. 30, 2013) (internal quotation omitted). A court may also impose safeguards and conditions on the deposition instead of prohibiting the deposition completely. *Id.*

Defendants contend that Mr. Diggins is medically unfit at present to sit for a deposition and doing so may cause him physical and psychological harm. They say they are not seeking to preclude his deposition entirely, they simply want a brief hiatus to allow him time to obtain further medical evaluation and get beyond the one year anniversary of the accident. As proof of his physical injuries and risk of harm, they offer a page from the medical records of the hospital that treated him after the accident (DE 33-1) and a letter from his treating neurologist, Dr. Andrew Galica (DE 33-2). As evidence of his psychological injuries and risk, they offer a letter and testimony from his treating psychologist, Dr. John Madonna (DE 33-3 and DE 42).

Defendants have not satisfied the heavy burden of demonstrating the need for a protective order preventing Mr. Diggins from being deposed entirely. Mr. Diggins suffered serious physical injury on the date of the accident including a collapsed lung, lung contusions, a broken back, left heel wound, facial laceration, and concussion. DE 33 at ¶ 1; DE 33-1. He was released from the hospital after one week, however, and is not currently hospitalized, incapacitated or in any acute physical distress that would render him physically unable to sit through a deposition. On October 13, 2020, Mr. Diggins's neurologist, Dr. Galica, recommended that Mr. Diggins not be deposed until after he receives MRI brain imaging and further neuropsychological testing to better define

his injuries, determine appropriate treatment and establish clinical stability. DE 33-2.[4] While the court appreciates this recommendation, Dr. Galica's signed but unsworn letter lacks sufficient detail to enable the undersigned to ascertain how long the necessary medical testing will take, why such testing was not completed in the year since the accident, what "clinical stability" looks like such that the deposition could move forward, and what the specific health risks are to Mr. Diggins if he sits for a deposition now. Dr. Galica's letter does not indicate that Mr. Diggins is medically unable to undergo a deposition at this time. Nor does it state that he has a serious acute brain condition that is or may become life threatening if he is deposed prematurely. It merely says in general and conclusory terms that a deposition is not "endorse[d]" or "prudent" until further testing can be done. DE 33-2. More than two months have passed since that letter was written. Defendants have offered no additional evidence from Dr. Galica despite having the opportunity to do so.[5] Thus, the letter from Mr. Diggins' neurologist, with its lack of detail and uncertain time frame, is insufficient to warrant a protective order preventing his deposition.

Defendants have, however, shown good cause to delay Mr. Diggins' testimony temporarily until such time as the one year mark of the accident has passed. The Court has received credible and uncontroverted evidence that being compelled to talk about details of the crash on or near the anniversary date could seriously jeopardize Mr. Diggins' psychological recovery. On December

---

[4] In the letter, Dr. Galica states:

> I have evaluated Patrick for his brain injury and sequelae. At this point, given his clinical instability, ongoing medication changes, and pending work-up which includes MRI brain imaging and neuropsychological testing, I do not endorse his participation in a deposition. It would be prudent to first ensure complete work-up that better defines the injuries and associated deficits. In addition, it would also be prudent to establish some clinical stability such that he could physically and mentally participate in this process effectively and safely.

DE 33-2.

[5] At the December 10, 2020 hearing, defense counsel stated that Mr. Diggins did indeed undergo an MRI after October 13, 2020, that showed he may have suffered a stroke. Counsel had no information about when the stroke occurred, its severity, or its impact on the issues pending before the Court.

10, 2020, Mr. Diggins' treating psychologist, Dr. Madonna, testified at a hearing before this Court. DE 42.  Dr. Madonna began treating Mr. Diggins after the accident and has conducted approximately twenty-four psychotherapy sessions with Mr. Diggins since February 2020.  He has diagnosed Mr. Diggins with post-traumatic stress disorder ("PTSD").  Dr. Madonna emphasized that, as a result of the accident, a student Mr. Diggins had coached for four years died.  Mr. Diggins now experiences significant PTSD symptoms from that event, including anxiety, constant intrusive thoughts about the accident and his student, and challenges with short-term memory, word finding, and volume control, particularly when discussing what happened that day.  The one year mark of the crash is January 15, 2021.  In Dr. Madonna's professional opinion, revisiting the details of that traumatic event at or near the chronological anniversary under adversarial circumstances such as a deposition could trigger Mr. Diggins' PTSD and set back his psychological recovery.  Dr. Madonna recommended that the Court allow the date of the accident to pass and delay the deposition until the spring of 2021 to give Mr. Diggins the best opportunity for continued recovery.

Based on Dr. Madonna's testimony, this Court finds good cause for a protective order delaying Mr. Diggins deposition until after March 15, 2020.  Such a protective order would requiring adjusting the deadlines and trial date currently set in this matter.  As the undersigned has no authority to change the trial date as set by the District Court, the undersigned advises the District Court of the pending motions and recommends entry of a protective order delaying Mr. Diggins deposition until after March 15, 2020 and a continuance of the trial date in this matter.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiffs' Motion to Compel Deposition of Defendant [DE 20] be denied and Defendants' Cross-Motion for

Protective Order [DE 33] be granted to delay Mr. Diggins' deposition until after March 15, 2021. It is further recommended that the trial date and pre-trial deadlines be adjusted accordingly.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald M. Middlebrooks, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988). Conversely if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 31st day of December, 2020.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE